IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SAMARATUNGA FAMILY TRUST | § | |
| | § | |
| V. | § | A-17-CV-097 LY |
| | § | |
| AMERICAN TOWER, INC. et al. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss (Dkt. No. 5); Plaintiff's Opposition (Dkt. No. 6); and Defendant's Reply (Dkt. No. 8). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules.

**I.  GENERAL BACKGROUND**

In January 2015, the Samaratunga Family Trust ("SFT") acquired a three-quarter acre tract of property in Hays County, Texas (the "Property"). Dkt No. 1-1 at 2. Fifty years before SFT bought the Property, Mary and Glen Key, then the owners of the Property, granted to Shell Pipe Line Corporation, an easement. Dkt. No. 5-1 at 4-6. In exchange for $1,693.69, the Keys granted Shell the following rights:

1.  The right to erect, construct, operate, inspect, maintain, repair, renew, substitute, and remove a microwave station and all appurtenances thereto consisting of a repeater house structure, tower, poles, electrical and communication lines, guy wires, anchors, and other appropriate apparatus, attachments, and appurtenances, to be installed at the location or locations to be selected by SHELL. . . .

2.  The right to fence a site on the above-described land not exceeding Fifty feet by Fifty Feet . . . upon which said repeater house structure, tower and appurtenances thereto will be located, and to have the exclusive use thereof.

> 3. The right to construct, maintain, repair and remove an electric power line consisting of wire, poles, and appurtenances thereto, and the right of ingress and egress in, upon, over, across, and through the above-described land and any adjoining lands owned by GRANTOR, including the right to use any roadways now or hereafter located thereon and the right to construct, maintain, repair, improve, and use a roadway along a route to be selected by SHELL, for any and all purposes necessary or convenient to the exercise by SHELL of the rights and easements herein granted.

Dkt. No. 5-1 at 4-5. These rights were granted to "Shell, its successors and assigns, forever." *Id.* The Easement further provided that it was "binding upon the heirs, executors, administrators, successors, and assigns of the parties," and the rights granted could be "leased or assigned, together, or separately, and in whole or in part." *Id.* As permitted by the Easement, Shell constructed a 180 foot tower on the property that was part of its Houston-McCamey Microwave System.

In 1994, Shell sold the tower at issue here (along with nine other towers) to Bowen-Smith Corporation. Through a series of name changes and mergers Bowen-Smith Corp. became American Towers. In 2001, American Towers entered into a license with New Cingular Wireless, PCS, LLC allowing New Cingular to conduct cellular communications from Tower No. 1048207—the tower at issue here ("Tower"). Dkt. No. 5-1 at 7-11. In January 2015, SFT acquired the Property. Some time thereafter, SFT became aware of the License Agreement between American Towers and New Cingular and the fact that New Cingular had installed equipment on the Tower for cell phone based communications. SFT contends that New Cingular is only the latest in a series of entities that have been given licenses by American Towers to conduct cell phone based telecommunications operations on the Property. SFT contends that American Towers' License with New Cingular, constitutes a breach of the Easement, since the Easement only permits use of a tower for microwave communications, and does not contain language allowing for other uses or equipment, including cell phone based equipment.

2

SFT sued American Towers in Hays County District Court, alleging breach of contract, quasi-contract, abandonment of the easement, trespass to real property and violations of the Texas Theft Liability Act. American Towers removed the case to federal court based on diversity of citizenship under 28 U.S.C. § 1332(a), and has moved to dismiss under Rule 12(b)(6), arguing that the suit fails to state a claim upon which relief can be granted because the Easement permits the use of the Property for cellular communications.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's pleading obligation requires use of "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court has explained that a complaint must contain sufficient allegations "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

## III. ANALYSIS

**A.      Breach of Contract Claim**

"A property owner's right to exclude others from his or her property is recognized as 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'"

3

*Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)) (internal citations omitted). While a landowner may choose to relinquish a portion of their rights by granting an easement, "[u]nlike a possessory interest in land, an easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Marcus Cable*, 90 S.W.3d at 700. An easement is a contract, and thus subject to the basic principles of contract construction and interpretation. *Id.* When an easement is created by an express grant, as in this case, "the scope of the easement holder's right must be determined by the terms of the grant." *DeWitt Cty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). When the grant's terms are not specifically defined, then they are given their plain, ordinary and generally accepted meaning. *Marcus Cable*, 90 S.W.3d at 701. "Nothing passes by implication 'except what is reasonably necessary' to fairly enjoy the rights expressly granted." *Id.* (quoting *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974)). Therefore, "if a particular purpose is not provided for in the grant, a use pursuing that purpose is not allowed." *Id.* at 701. As the Texas Supreme Court explained, if the rule were otherwise:

> then the typical power line or pipeline easement, granted for the purpose of constructing and maintaining a power line or pipeline across specified property, could be used for any other purpose, unless the grantor by specific language negated all other purposes.

*Id.* (quoting *Kearney & Son &Fancher,* 401 S.W.2d 897, 904-05 (Tex. Civ. App.– Fort Worth 1966, writ ref'd n.r.e.)).

While the common law recognizes that certain easements may be assigned or apportioned to a third party, the third party's use cannot exceed the rights expressly conveyed to the original easement holder. *Krohn*, 90 S.W.3d at 700. *See also*, *Carrithers v. Terramar Beach Cmty.*

4

*Improvement Assoc.*, 645 S.W.2d 772, 774 (Tex.), *cert. denied*, 464 U.S. 981 (1983) ( "[A]n easement may not create a right or interest in a grantee's favor which the grantor himself did not possess."). American Towers' motion turns on whether the Easement grants the right to use the tower for cellular communication networks. As discussed above, the Easement grants American Towers the right to "erect, construct, operate," etc. "*a microwave station and all appurtenances thereto.*" Dkt. No. 5-1 at 4 (emphasis added). SFT contends that because the Easement only permits the operation of a *microwave station* on the Property, American Towers' use of the tower for cellular communications violates the Easement.[1]

### 1. Has SFT alleged a viable breach of contract claim?

American Towers argues that SFT's breach of contract claim should be dismissed because the Easement does allow for the operation of a cellular communications station. American Towers argues that under Texas law the manner of an easement's use may change over time to accommodate

---

[1] For its position, SFT relies not only on the plain language of the Easement, but also on the alleged purposes for which the Easement was obtained. The latter argument is outside the scope of a Rule 12(b)(6) analysis, as it relies on information beyond the complaint or its attachments. *See Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (court may not look outside the pleadings when deciding a Rule 12(b)(6) motion). Similarly, American Towers' request that the Court look to the FCC's understanding of "microwave station" to construe the contract runs afoul of Rule 12(b)(6) as well, given that there is no evidence regarding whether the parties were aware of, or incorporated, that understanding into the Easement. Further, given that the definition comes from the FCC's internet website, and the Easement was executed in 1966, 25 years before the World Wide Web became publicly available, the Court is confident that the specific definition quoted by American Towers could not have been relied on by the parties. And as for American Towers' reliance on a Wikipedia definition of "microwave transmission," Dkt. No. 8 at 6 n.8, the Court will go no further than to quote Wikipedia's own disclaimers: "Anyone with Internet access can write and make changes to Wikipedia articles," and "because anyone can click 'edit' at any time and add stuff in, any article may contain undetected misinformation, errors, or vandalism." *About Wikipedia* available at https://en.wikipedia.org/wiki/Wikipedia:About (last visited May 22, 2017). Suffice it to say that this is not one of the rare instances in which Wikipedia might be a proper authority to cite in a legal brief.

technological advancements. American Towers contends that the original purpose of the Easement was to allow the grantee to construct towers and poles for the purpose of emitting communications. Because cellular communications have replaced microwave communications, American Towers argues that permitting cellular communications complies with the Easement's original purpose of allowing for communications. SFT disagrees and contends that the unambiguous terms or the Easement only permit the operation of "a microwave station" to assist Shell in operating and maintaining a pipeline, not for a telephone network. SFT contends that if Shell had sought to use the Easement to engage generally in telecommunication transmissions, it would have granted Shell the right to install "telephone" or "telegraph" lines.

The Texas Supreme Court has recognized that while "the manner, frequency, and intensity of an easement's use may change over time to accommodate technological development . . . such changes must fall within the purposes for which the easement was created," because "an express easement encompasses only those technological developments that further the particular purpose for which the easement was granted." *Marcus Cable*, 90 S.W.3d at 701-02. In support of its claim that the Easement allows for the operation of cellular communications, American Towers relies heavily on *Centerpoint Energy Houston Electric LLC v. Bluebonnet Drive, LTD.*, 264 S.W.3d 381 (Tex. App.- Houston [1st Dist.] 2008, pet. denied). In *Centerpoint*, the property owners brought trespass claims against the owner of a utility easement claiming that installation of wireless communication equipment exceeded the scope of the easement. The court rejected that argument because the easement specifically granted right of way for "all necessary and desirable appurtenances" including "telephone and telegraph wires." *Id.* at 390. Thus, the court found that the terms of the easement were sufficient to encompass use of the easement for cellular transmission lines and equipment. *Id.*

6

*Centerpoint* does not help American Towers' case, however, because the Easement here is much narrower. The Easement permits American Towers to operate "a microwave station" and "electrical and communication lines" related to that microwave station. It never mentions use of the tower for telephone communications. The Easement is more akin to the easement at issue in *Marcus Cable*, which allowed an electric utility permission to construct and maintain "an electric transmission or distribution line or system" over private property. Marcus Cable then contracted with the utility to attach its cable lines to the utility's poles. *Id.* The property owners sued, claiming that the cable company's use exceeded the scope of the easement and that they had not consented to the placement of the cable lines across their property. *Id.* The court found that the the easement allowed the utility to run lines for "electric transmission" and "electric distribution," and those terms are commonly and ordinarily associated with power companies conveying electricity to the public, which did not include running wire for cable television transmission. *Id.* at 706. The court reasoned as follows:

> The dissenting Justice would hold that the easement could properly be read to encompass cable because electricity is used in the transmission of cable television signals. Under such a reading, however, the easement could also be used for telegraph or telephone lines. Obviously, the Krohns' predecessors could have granted an easement for those purposes. But the easement's specific terms cannot be read so broadly.
>
> In sum, the easement language here, properly construed, does not permit cable-television lines to be strung across the Krohns' land without their consent. However laudable the goal of extending cable service might be, we cannot disregard the easement's express terms to enlarge its purposes beyond those intended by the contracting parties.

*Id.* The Easement here is similarly narrow in its description of what the tower may be used for, and the Court cannot say, as a matter of law, that SFT's claim that the Easement does not allow

installation of cellular equipment on the tower is incorrect. The complaint is thus sufficient to state a claim for breach of contract, and the undersigned recommends that American Towers' motion to dismiss on that ground be denied.[2]

## 2. Is the breach of contract claim barred by limitations?

In the alternative, American Towers argues that SFT's breach of contract claim is barred by the four-year statute of limitations contained in TEX. CIV. PRAC. & REM. CODE § 16.051. SFT's breach of contract claim is based on an agreement American Towers entered into in 2001, which allowed New Cingular to conduct cellular communications from the Tower. The lawsuit was not filed until January 12, 2017, however, more than 15 years after American Towers entered into that agreement. American Towers thus contends that SFT's breach of contract claim is barred by the four-year statute of limitations.

In response, SFT argues that the discovery rule tolls the statute of limitations in this case. As noted earlier, SFT acquired the Property in 2015. It claims it did not become aware of the American Towers/Cingular License even when it purchased the Property in 2015, because a title search in Hays County only revealed the original 1966 Easement granted to Shell by the Keys. It did not show Shell's sale of the tower and its rights under the Easement to Bowen-Smith Corp. (American Towers' predecessor), as records of that sale were only recorded in Harris County, Texas. SFT contends that it first discovered the License Agreement in 2016, when it was negotiating an

---

[2]Neither party is asserting that the contract is ambiguous, so the question may ultimately be one of law for the Court to resolve. This does not mean, however, that the Court must resolve it at this stage. As mentioned in the prior footnote, both parties request the Court to consider extra-contractual matters in construing the contract (Shell's intention in obtaining the easement, and industry understanding of what microwave communications are used for), and thus construction of the contract is premature at this time.

easement with Verizon for an underground fiber line. Dkt. No. 6 at 9. SFT contends that under the discovery rule the statute of limitations for the breach of contract claim thus did not begin to run until 2016.

Under Texas law, a claim for breach of contract is subject to a four-year statute of limitations. *Smith Int'l Inc. v. Eagle Grp., LLC*, 490 F.3d 380, 386 (5th Cir. 2007); TEX. CIV. PRAC. & REM. CODE § 16.0051. The general rule is that such a claim accrues on the date of the breach. *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015). "As a rule, we have held that a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). One "very limited" exception to this principle is the discovery rule. *Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). "The discovery rule has been applied in limited categories of cases to defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). For the discovery rule to apply "the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable." *Id.* "An injury is inherently undiscoverable if it is the type of injury that is not generally discoverable by the exercise of reasonable diligence." *Tipton v. Brock*, 431 S.W.3d 673, 677 (Tex. App.–El Paso 2014, pet. denied). Texas law only permits the rule to be applied "in circumstances where 'it is difficult for the injured party to learn of the negligent act or omission.'" *Computer Assocs*, 918 S.W.2d at 453 (citation omitted). "The court's focus is on whether a type of injury rather than a particular injury, is unlikely to be discovered within the prescribed limitations period despite due diligence." *Tipton*, 431 S.W.3d at 677.

9

As already noted, in deciding a motion to dismiss, the Court is limited to the four corners of the complaint, and any attachments incorporated into the complaint, such as a contract. For dismissal based on limitations to be proper, the complaint itself must show that the statute of limitations has run. *Taylor v. Bailey Tool & Mfgr. Co.*, 744 F.3d 944, 946 (2014). Only when "it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling" may a motion to dismiss on limitations be granted. *Id.* That is not the case here, as SFT has raised a basis for tolling in its complaint—the facts discussed earlier regarding it only discovering the sale of the original easement rights in 2016. Dkt. No. 1-1 at ¶¶ 5-8. Indeed, American Towers' limitations argument is a moving target, and morphs from its motion to its reply. In the motion, it merely contends that the license between American Towers and Cingular was executed in 2001, and the lawsuit was not filed until 2017. Dkt. No. 5 at 5. It makes no attempt to address the discovery rule. In the reply, American Towers changes the argument entirely, turning it into a standing argument, contending that because the "injury" to the Property occurred before SFT purchased it, SFT has no right to sue for that injury. Dkt. No. 8 at 2-3. But a suit for breach of contract is not a suit "involving injury to property." SFT is suing for breach of contract under the Easement, which it plainly has standing to enforce as the owner of the Property. American Towers' standing argument is misguided and wrong.

In neither its motion nor its reply does American Towers address SFT's discovery rule argument, and for that reason alone dismissal on limitations grounds is unwarranted. Even it addressed the argument, it would not be entitled to dismissal at this point. As many courts have noted, determining discovery rule issues is ordinarily not suitable at the dismissal stage, but instead is appropriately determined on summary judgment or at trial. *See, e.g. USPPS, Ltd. v. Avery*

*Dennison Corp.*, 326 F. App'x 842, 2009 WL 1687647 at *7 (5th Cir. 2009) (noting that the majority of Texas Supreme Court cases applying discovery rule before trial were summary judgment decisions). Here, for example, the record is silent regarding whether a reasonable property owner would have been able to see that the towers were being used for cellular communications. The record is also silent regarding whether a record of the sale of the tower and the original easement to American Towers' predecessor should have been recorded in the real property records of Hays County, and what impact that has on whether SFT exercised diligence learning of the alleged breach. Finally, there is nothing in the record regarding what transpired between the prior owners of the Property and American Towers on these issues from 2001, when the License Agreement was signed, until 2015, when SFT purchased the property, and whether any of those facts are relevant to the statute of limitations issue.[3]

Because there are many relevant facts not contained in the pleadings at this early stage of the case, and given that the motion before the Court is brought under Rule 12(b)(6), dismissal is not appropriate on the statute of limitations issue at this time.

**C.     Quasi-Contract Claim**

SFT also alleges that American Towers breached an implied or quasi-contract, and has been unjustly enriched. "[W]hen a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). "Accordingly, when a party claims that it is owed more than the

---

[3]This could include such facts as when cellular equipment was first installed on the tower, whether notice was given to the property owners of that installation, and whether the prior owners were otherwise aware of the use of the tower for cellular communications or explicitly permitted it. Further, neither party addresses the legal impact of any such facts, and whether the failure (if any) of the prior owners to object to the use of the tower for cellular purposes limits SFT's rights.

payments called for under a contract, there can be no recovery for unjust enrichment 'if the same subject is covered by [the] express contract.'" *Id.* (quoting *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex.App.—Texarkana 1988, writ denied)). It appears that SFT's claim will either succeed or fail on its contract claim under the Easement. Either the Easement permits use of the tower for cellular purposes, or it doesn't. If it does, then SFT cannot prevail on a quasi-contract claim under *Fortune Prod. Co.* If it does not, SFT's claim for breach of contract is the proper claim, and a quasi-contract theory is superfluous. Because an express agreement already addresses the subject matter of the implied-contract claim, the implied contract claim must be dismissed.

**D.     Abandonment Claim**

In the alternative to its breach of contract claim, SFT asserts that American Towers abandoned the Easement because it has ceased using it for the intended purpose—as a microwave station supporting pipeline operation, monitoring, and maintenance. To show abandonment of an easement, the plaintiff must prove a "definite act showing an intention to abandon and terminate the right possessed by the easement owner." *Dallas Cty. v. Miller*, 166 S.W.2d 922, 924 (Tex. 1942). The intent to abandon must be proven by "clear and satisfactory evidence." *Id.* Even non-use of an easement is not enough to show abandonment, as *Miller* requires an affirmative act to support abandonment. *Smith v. Killion*, 2013 WL 1859336 *5 (Tex. App.–Eastland, April 30, 2013 no pet.); *see also Anderson v. Le Duke*, 218 S.W. 655, 656 (Tex. Civ. App.—Texarkana 1920, writ dism'd w.o.j). Misusing an easement is also not the same as abandonment. *Perry v. City of Gainesville,* 267 S.W.2d 270, 273 (Tex. Civ. App.– Fort Worth1954, writ ref'd n.r.e.); *Spool Stockyards Co. v. Chicago, R. I. & P. R. Co.*, 353 F.2d 263, 266 (5th Cir. 1965). Finally, failing to abide by the terms

of an easement does not constitute abandonment. *Smith v. Huston,* 251 S.W.3d 808, 828 (Tex. App.—Fort Worth, 2008, pet denied)

Given these legal principles, there is no way to construe the allegations of SFT's complaint as stating a valid abandonment claim. It contends that by either removing the mircowave facilities from the tower, or by leaving the microwave facilities there but not using them, American Towers abandoned the Easement. The foundation of the claim is the assertion that, by not using the Easement for its intended purpose (microwave communications), American Towers is effectively not using the Easement at all. This is insufficient to state a claim. Indeed, as American Towers notes, SFT's complaint alleges that American Towers has continued to use the easement up to the present, albeit for purposes SFT claims exceed the scope of the easement. Given the clear law providing that neither misuse of an easement, nor breach of its terms, amounts to abandonment, SFT has failed to state an abandonment claim on which relief may be granted.[4]

**E.     Trespass and Theft Liability Act Claims**

SFT's Petition alleges that because the Easement has been abandoned, American Towers has committed trespass to real property and has violated the Texas Theft Liability Act (TEX. CIV. PRAC. & REM. CODE §134.001 et seq.). "Trespass to real property requires a showing of an unauthorized physical entry onto another's property by some person or thing." *Yalamanchili v. Mousa*, 316 S.W.3d 33, 40 (Tex.App.-Houston [14th Dist.] 2010, pet. denied). Thus, to state a claim for trespass under Texas law, a plaintiff must allege there was "an unauthorized entry" upon his property. *Barnes v.*

---

[4]This is not a situation where amendment of the pleadings might cure the defect, as the problem is not a failure to plead sufficiently, but rather is that the facts cannot, as a matter of law, support a claim of abandonment. As noted in the text, SFT's own pleadings demonstrate that American Towers and its predecessors have made continuous use of the Easement for over 15 years, and the most that SFT has alleged is American Towers' use of the Easement exceeded its terms.

*Mathis*, 353 S.W3d 760, 764 (Tex. 2011). Under the Texas Theft Liability Act, "[a] person who commits theft is liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE § 134.003. Theft, in turn, is defined as "unlawfully appropriating property or unlawfully obtaining services as described by" certain sections of the Texas Penal Code. *Id.* at § 134.002(2). Because SFT has failed to state a claim for abandonment, it cannot show an unauthorized use or an unlawful appropriation of the Property. The trespass and statutory theft claims therefore fail as a matter of law.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendant's Motion to Dismiss (Dkt. No. 5), and **DISMISS** with prejudice for failure to state a claim all of SFT's claims except its breach of contract claim.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466,

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 24th day of May, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE